Good morning. May it please the court. My name is Jeff Price. I represent Mr. Young. OK. And if you can keep your voice up, I'm old and I'm deaf. Thank you, Your Honor. I'd like to reserve eight minutes for rebuttal. OK. Good luck with that. And I would like to set out with addressing the harmless error argument on behalf of the defendants in the wake of Kingsley. There can be no harmless error in this case because the jury instructions given, and this is touched on by the Kingsley case on remand in the Seventh Circuit, used a subjective test, and that is the malicious and sadistic test. In addition, the jury instruction given in this case also required that the jury give deference to prison officials in the adoption and execution of policies and practices that, in their judgment, are needed to preserve discipline and to maintain internal security. Well, is that last instruction improper? Absolutely. Kingsley doesn't speak to that. Well, that is a Whitley v. Albers instruction that is probably even more onerous than the malicious and sadistic aspect of the Eighth Amendment instruction, which is wholly in opposite to this kind of a case. So the harmless error argument, I believe, fails for those reasons. OK. It's pretty clear that the wrong instruction was given with respect to – and Kingsley straightens this out. So we know that the law of the case probably doesn't apply, even though we previously approved the instruction. I think Kingsley tells us the instruction's wrong. But the harmless error, for me, is a little bit difficult, because I understand he's had two trials, and both of them were under the wrong standard. But I've seen a lot of these cases – in fact, I tried one of these cases a couple of times with a hung jury. The evidence in favor of your client is somewhat difficult, meaning it's a he-said-she-said. You've got the prison guards, or the sheriff's deputies in the jail, testifying among themselves moderately consistently, and he's in the unit in the jail reserved for disciplinary problems, and he's had two trials. He has a record of fighting. So the excessive force, to the extent you've got a good argument that there was excessive force, is not, I think, in the initial encounter. It's likely to be that during the fight that they hit him too hard, they continued to hit him, and so on. That's going to be a tough case to win, even on the correct standard. I won't say it's impossible, but it's going to be a tough case to win. Many of these cases are tough to win, but I would like to point out one thing. The court indicated that Mr. Young had a record of fighting. That is actually coming from the appellee's supplemental brief on page 7, and that is a false statement.  If one looks at the excerpts of record, SCR 35, SCR 110, there is no such evidence to support that. Actually, what Mr. Young was asked was whether he had been placed in discipline for an incident with other deputies, and he said, yes, you could say that if you were a slick lawyer. But incident is not otherwise described? No, it is not, and so the fighting gloss is actually completely uncalled for. Counsel, Judge Gould, if I could interject a question here. So, as Judge Fletcher said, we know from Kingsley that there was an error in the instruction. It didn't require subjective knowledge of the guards that they be acting excessively, but some objective standard applies. So, that being the case, are you asking us to vacate and remand, or should we be vacating and remanding or reversing and remanding? I would say to reverse and remand. And remand for what? New trial? For a new trial, with the correct instruction, which I have argued in this case for years, is the instruction that the U.S. Supreme Court in Kingsley stated is the correct instruction. In fact, this case is mentioned. Objective reasonableness. Yes, this case is actually disapproved of by the U.S. Supreme Court. I noticed that. It was cited. But you don't usually pay attention to where men dispose, but it was cited. So, moving on, if I may, to the malicious prosecution issue, which is here from summary judgment prior to the trial. I think that that was addressed pretty directly in my reply brief that was filed a couple months ago. But one thing I'd like to point out to the court is that this confusion that is imported into this case by the defendants really doesn't exist. If one looks at exactly what happened, it is very clear that Mr. Young was over-detained and suffered a liberty deprivation because he was acquitted on the charges that were brought against him. He was brought stemming out of this May 15, 2004 incident on September 9th. But he stayed in jail. So how could he stay in jail if he had not lost a liberty interest? He stayed in jail because he had to go back to Van Nuys in order to have that court recalculate his liberty. Calculate his sentence for the time that he had stayed in jail that entire time. And I did the calculations. The statutes involved, the California Penal Code statutes, there's nothing mysterious about those statutes. Those are simply statutes that any court has to parse. As a matter of due process. As I read the record, the Superior Court on September 14th did the calculation for you, meaning Superior Court says 2 to 1, that is to say, gave him good time credits as if he had been in prison, and calculating whether he had overstayed, says 2 to 1 is the ratio. You've stayed in longer than you should have stayed. That is right. And it's actually kind of misleading. The 2 to 1 ratio is actually a calculation where every four days in custody results in six days of credit. People kind of think about that as a 2 to 1. As I recall, the Superior Court even said 2 to 1. That could be, but it's set forth, and he was clearly over-detained 85 days. And this argument that the defendants adopted originally came from the District Court. We were here before this Court reversed because the District Court actually, sua sponte, came up with that argument. It was based on some cases from New York State involving prisoners, not pretrial detainees. So I'm requesting that that summary judgment be overturned, and I will save any time on the Batson issue for later in rebuttal. So you put Batson on the table so that whatever you might say later can be legitimately called rebuttal. Let's hear from the State. Good morning, Your Honors. I'd first like to say that I think that Kingsley does address the deference standard. I think Kingsley does comment that deference to the penalogical nature of the statute. I think that the penalogical judgment of the custodians of the jail facility is at issue in this sort of case. So not only would we have an objective reasonableness standard now that dispenses with the malicious and sadistic, but it would have to have some deference. I mean, that legitimate government interest is spoken to directly in the Kingsley case. So I was here before, and we had this dispute as to whether the correct jury instruction arose under the eighth or the fourth. And now we're really... It's now clear that you were wrong and we were wrong. Yes, and in reliance on the interim order, we went back and we tried it again. And first we argued that this was law of the case, and, of course, that was before Kingsley came out. And even if we were to presume that this error was prejudicial, it's harmful, unless it's more of a judgmental nature. It's more likely than not that the jury would have come to the same conclusion. And looking at the facts here, and they're somewhat different from Kingsley. In Kingsley, there was no dispute that this inmate was handcuffed on a cot and then tased. So the parties were clear that that had happened. There was no dispute as to that. Here, the jury, in looking at all the evidence, either had to accept or reject plaintiff's version of the events. Well, I'm not sure that's right. I mean, any jury hears a lot of stuff, and they don't have to believe one side altogether and disbelieve the other side altogether. They can say, well, this might have been true, that might have been true. Mr. Price, in his closing argument, actually argues as well that these two versions of the events are really irreconcilable. And there was really no act, there was no particular act that the jury could say, well, this was unreasonable and excessive, but it didn't amount to malice. Well, I'm not sure I see that. Given the testimony on both sides, and I understand what the testimony was, I think it's entirely possible that a jury might find on an objective standard that this was excessive force, whereas it would not have found that it was malicious and for the purpose of inflicting pain. It's possible. Now, whether it lies at the level of, we've got to have another case, another trial, that's a different question. But I think it's entirely possible that a sensible jury could do that. I think looking at the entirety of the record, though, it's clear that the jury resolved the facts against the plaintiff. Well, it resolved enough of the facts against the defendant in order to hold that the defendant had not proved by a preponderance of the evidence that the deputies intentionally and maliciously, for the purpose of inflicting pain, did what they did. That's a very different question from whether the deputies, in an objective measure, used excessive force. I think that this Court, though, can look at and make a factual determination, but can look at the record and see that it is not more probable than not that a third trial is going to resolve this in the plaintiff's favor. It could. I don't know. With respect to the malicious prosecution issue, we were here and the Court indicated that it needed to go back so that Mr. Price and Mr. Young could brief the issue of whether these custody credits arose to the level of a mandatory or permissive right. If they were mandatory, that would give rise to a liberty interest that would create the constitutional hook for a claim of malicious prosecution. So he had an opportunity, it was handed to him, to rebrief this issue. We judicially noticed the Court's docket in the criminal trial. That docket simply said, I'm going to reconsider this under penal code, and it actually cited a wrong penal code, but we're assuming that it was Penal Code 1170A3. And it doesn't make any determination as to under what standard, whether it was Penal Code 4019, whether it was 2900.5, whether it was some other custody credit standard, whether Mr. Young had accrued these as a result of good behavior or as a result of some circumstance or whether he was required to be given these custody credits. So until the issue of mandatory or permissive is resolved, it isn't a liberty interest that is cognizable under the Fourth Amendment. And that is what was to be determined at the trial level after remand. And that didn't happen. There was simply no evidence. There wasn't, for instance, the motion for sentence reconsideration might have been put into evidence, expert evidence, something to meet the opposing party's burden on summary judgment of what the Court was considering. I haven't heard enough that the Superior Court judge on September 14th, who ordered immediate release, saying you've already served more time than you should have served. And he says two to one, but what he really means is for every three days in, you get one day a good time. The Superior Court judge, knowledgeable about state sentencing law, knowledgeable about credits and so on, says you've overstayed your time because you were in jail waiting for the outcome of this malicious prosecution suit, waiting for the outcome of the beating up and attacking the deputy suit. I don't think it's enough for the district court's purposes. I don't think it's enough to meet the opposing party's burden of proof. He may have had his reasons, but those reasons aren't discovered on the face of the record and we judicially noticed the docket and there isn't any other evidence. Could I ask you a question on malicious prosecution from a slightly different angle? Because I might be wrong, but I haven't really been persuaded yet in my mind that it's clear-cut whether there's a property interest here, I mean a liberty interest here in terms of how long he was jailed. However, for a malicious prosecution claim, I know the elements, even assuming he had a liberty interest curtailed, would require evidence of malice in bringing the charge. That's one element of malicious prosecution. And our panel, I think, has the power to affirm under our precedent on any grounds supported in the record. So the question I have is a practical one, is whether there's any evidence of malice in the record, because if there isn't, I think we could sidestep the issue that you and your colleague, appellant, were arguing about the days in prison and whether he was there longer than he had to be. My question is the guy gets in a fight and he's swinging at people, they're swinging at him, and then he gets charged with assault. And the appellant claims it's malicious charge of assault. So I'm asking you as the, I guess, the warden's counsel, could we say there's no evidence of malice and affirm that issue on that ground? I know of no evidence of malice in the record. Yeah, I know of none. I don't know that we actually produced evidence of specific intent in support of our motion for summary judgment. I don't know that there was any evidence at all in opposition. So to the extent that the moving papers, at least the first moving papers, I believe we did say there was no malice. But as to the second, we were really addressing specifically this custody credit issue. But the jury certainly didn't find malice, and they heard all of the evidence. Yeah, well, malice in the prosecution is distinct from malice in the beating up. Those are related but different. Only the criminal docket might evidence something, but it indicates that it just wasn't enough for the prosecutor or hadn't met his burden of proof in establishing that. To follow on with Judge Gould's question, what was the state of discovery with respect to malicious prosecution? The district judge, Sue Esponte, at least at the outset, said, well, no, there's no malicious prosecution because you have no liberty interest, because there's no showing you would have got out of jail any earlier absent the prosecution. Well, he doesn't reach the question as to whether or not there was malice because he uses this other ground. So my question is really a follow-on to Judge Gould's. Given the posture of the case and the discovery that had taken place, would there have been evidence in the record as to whether or not there was malice? Was it possible that there was going to be more discovery? Sort of where are we? I mean, I understand there may not be any evidence on the record right now, but would there have been given the posture of the case? Well, there would have to be, no. What would it have to be? It would have to be that these deputies engaged in pressing legal process and pressing charges knowing that there had been no cause whatsoever. And I don't think that's the case. What's in the trial exhibits that I understand have been transmitted to this court are all of the reports of the deputies, and they're all fairly specific as to what happened, and there were five or six reports, I believe, and they all briefed independently the incident and all of the specifics of what happened. I mean, there is good reasons to have brought the prosecution. I think what other evidence of malice might there be? They had some legitimate, I think, perfectly valid grounds to say this inmate had assaulted, had acted assaultively, but they simply couldn't meet their burden of proof in the criminal court. I have to say I'm sympathetic with Judge Gould's question, or where I think it's headed, because whenever you have a fight between an inmate and a guard, I start out with the assumption that it's at least plausible that that is a criminal assault. But I'm nervous about the state of the record or how the record might have been developed if it had not been dismissed on this ground of, listen, you had no liberty interest. I mean, it would have to have established some collusion with the district attorney and all of the... Were there depositions taken of the deputies? Yes, I believe, yes. You believe it? You're not sure? Yes. This is eight years ago, and I was in trial counsel, but yes, all the depositions went forward in the civil case. There were depositions in the criminal case as well. And there were depositions taken in the civil case for malicious prosecution? I can't tell the Court what the timeline was, whether those depositions went forward before or after the summary judgment. I do not know the answer to that. I'm sorry, Your Honor. Okay. I'd like to be able to affirm, if we can, on that one, just to spare everybody the trouble. But if the record is incomplete because somehow the question wasn't properly presented, because the district judge, just to respond to it, dismisses that malicious prosecution case pretty fast. I just don't know. Maybe the other side can help a little bit on the state of the discovery. The last question I'd like to address is the Batson issue. I don't know that the plaintiff met his prima facie case of establishing that there was an inference of a race-based decision or a race-based exercise of a peremptory strike on the part of the defense counsel. There were two questions asked of the jurors, and the peremptory exercise against Mr. Phillips was he was the only juror who basically answered in the affirmative to two questions, whether do you have a family member in custody and do you have any law enforcement experience. He was the only person in the veneer who answered affirmatively, and he had a member of his family in an L.A. county jail, so not just a jail somewhere in the state, but literally in the institution that we were to try. And the only other person who had a family member in L.A. county jail was also the subject of a peremptory challenge, and that the plaintiff exercised it before defense could is in and of itself evidence of that it was a racially motivated challenge as against Mr. Phillips. So it's speculative to say that defendants wouldn't have exercised a peremptory as to Ms. O'Hire because it already happened. He had already done it. And if the court has no more questions. Well, just a technical question. Am I right in thinking that if we feel the excessive force issue requires a new trial because of erroneous jury instruction about objective versus subjective intent here, then the Batson issue would not have to be reached, right? If you have to retry that case, then we shouldn't have to talk about Batson. I agree, Your Honor. I've got another practical question along those same lines. If we were to reverse on the jury instruction and to send it back for further proceedings, probably yet a third trial on the question of excessive force, and if we were to say that because of the miscalculation of the good time credits, there was a deprivation of liberty interest, and if it were to go to trial, I'm not sure it would because the evidence may then come in, listen, there was no malice in summary judgment, if it were to go to trial, would those two cases be tried together, the malicious prosecution and the excessive force? I assume they have been filed as separate cases. No, they were part of the same case. They were part of the same case. I don't see why they wouldn't be tried together. Okay. So if we're retrying one, why not let's put it all out there? I would prefer not to try it again. I just want to add, though, with respect to the statement that we made a misrepresentation in our supplemental brief, I think that the evidence is in the record and to the extent that plaintiff feels that we've leaned on it too hard. This man was in disciplinary lockup, and there was evidence that very serious issues get addressed in disciplinary lockup, particularly when people are there for 20 days, which is how long he was there. So I stand by the statement. Well, he was in there for an incident. Do we know anything about the court incident? I don't, actually. It is my understanding that it is an incident between he and the deputies that was serious enough to merit 20 days in discipline. Whatever that might have been. Okay. Thank you. I'm aware of the fact that counsel was not trial counsel, but her statement in her supplemental brief is false. Which statement? She also, that I referenced in SCR 35 and SCR 110, so she can stand on it, but it's not true. She also made several. I'm still having trouble. Which statement is false? That Mr. Young was disciplined for fighting deputies. Oh, okay. But I think she just qualified or at least clarified. She's saying he was disciplined for an incident, and he was there for 20 days, and she does not know more than that. Actually, 20 days is, well, you know, I'm not even going to. The statement is false. That's the absolute truth. And counsel also made two glaring misstatements to this panel. And this proceeding is being recorded about the Batson claim. It is absolutely false that Mr. Phillips was the only person who stated he had a relative in some kind of some form of incarceration. There was another. That is in my argument. She clearly misstated it, but then she went on to say that the other person who had somebody who was incarcerated was challenged by your client. So it was a misstatement, but it was obvious that she understood very well that there was another such person. Well, the more glaring misstatement that she made is that Mr. Phillips had a relative in L.A. County Jail, because that is absolutely not true. That is false. My understanding is that he was in prison. That is correct. And the person who had a relative who had been in L.A. County Jail was the person whom we had to strike. But regardless of when we struck that person, that was briefed. But the malice issue brought up by Judge Gould, respectfully, is a red herring. The word malice in the context of malicious prosecution, as it is recognized in the Ninth Circuit, merely means no probable cause. This issue was never briefed in this case, ever, by anyone. It was conceded by the defendants, because the bringing of a malicious prosecution case is essentially asserting that the original, levying of charges against a person is without probable cause. That's all that that means. And that's in the Awabdi case and other cases. Counsel, if you have California law precedent, that would apply here, right? You have precedent that says it's only probable cause. You may be right. But I know I've had many malicious prosecution cases involving laws of states in our circuit, where the elements included both that there was no probable cause, and also that there was an element of malice in bringing the charges. Your Honor, that is not the standard in the Ninth Circuit. The Awabdi case and numerous other cases have addressed this. It is not a hot issue. It is a dead issue. So the case you're citing, Awabdi, can you give me the site? I cannot give it to you off the top of my head. It was never briefed in this case, but I will send a supplemental letter briefing. What we're concerned about here is what is California law, right? Correct. But, Your Honor, this is thoroughly addressed in Awabdi and a number of other Ninth Circuit cases, because the Ninth Circuit has decided, unlike some other circuits, I believe the Seventh, the Ninth Circuit has decided to permit this malicious prosecution cause of action to be brought under 1983, 42 U.S.C. 1983. And so there are aspects of California law that are imported into the cause of action. Okay. So if the court is interested in the possibility whether we should affirm on a different ground from the record, we could order both parties to give us briefs on the applicable elements of malicious prosecution here. Yes. I will do so. Well, before you say I will do so, wait for an order from the court. You don't need to do it now as a volunteer. If we decide we want that briefing, we will notify counsel. Thank you. So I just want to make clear that that issue was never brought up. When the defendants filed the motion for summary judgment, they filed a motion for summary judgment on the independent judgment defense, where a party asserts that the charges were maintained by the prosecution based upon the independent judgment of the prosecutor. That's what their motion was made on. And they did that on that basis in a written order, which is in the excerpt of record at 2ER. If I can just see it. Well, we can find it. 2ER.244, Roman numeral 2 and then 10.6ER.244. So that issue was disposed of and that was the only issue they brought. I'd like to say I think it doesn't seem to me it's very important to try to pull in on what was decided and what was raised. Because under the doctrine that we can affirm on any ground stated and supported in the record, it doesn't have to have been raised by anybody. It's a question of what are the undisputed facts and what's the standard of law. So if the standard of law requires malice, and you've said it does not, but if it did require it, and if the record showed no evidence of it, I think that that would be a permissible option for us. But if we're inclined to consider that, I'm sure you'll get a chance to write a long brief. Thank you. I have no quarrels with what Your Honor stated. I would like to point out something. Well, you're over time, so if you'd like to sum up. I would. I'd like to say two things. One is that we do have two percipient witnesses to the assault on my client. And one of them testified, the other we lost for various reasons, but he's still out there. In other words, you might find him again? We had him, but he wasn't there, for lack of a better explanation. But the other thing I would like to say with respect to the malicious prosecution is that the characterization that Mr. Young somehow sought a modification of his sentence in the Superior Court is not true. That is not what occurred. He simply went back to Van Nuys because he had been over-detained, and he couldn't get released without an order from the Superior Court. So that's all that occurred, and there's no such thing as mandatory or permissive credit for time served. Credit for time served is a due process right. It's not permissive. It's always mandatory. Thank you.
judges: W. Fletcher, Gould, Christensen